## MATTER OF SANCHEZ

### In Deportation Proceedings

### A-14273169

*Decided by Board January 15, 1980*

(1) A crime committed within 5 years of any entry made by an alien can form the basis for deportation under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(4).

(2) An alien who entered the United States frequently as a commuter between 1970 and 1976, and whose mail fraud began at an unknown date and continued to July 1976, committed the crime within 5 years after entry, and when given a suspended sentence of over 1 year was deportable under section 241(a)(4).

(3) While an alien coming into the United States under custody did not make an entry, as he was not "free from actual or constructive restraint," an entry was made at the time he was released from custody.

(4) In order for an alien to establish "domicile" in the United States for section 212(c) purposes (8 U.S.C. 1182(c)), he must have the intention of making the United States his home for the indefinite future; that an alien is a lawful permanent resident does not necessarily mean he is domiciled in the United States.

(5) Where for 6 years a lawful permanent resident commuted to work in the United States, but had no home here and lived for all that time with his family in Mexico, he was unable to satisfy the 7 years lawful unrelinquished domicile requirement to section 212(c), despite paying taxes here, having a California driver's license, and registering for the Selective Service.

(6) Relief under section 212(h) of the Act may be granted nunc pro tunc in deportation proceedings in order to cure a ground of in admissibility at the time of entry.

(7) The fact that an alien is charged with deportability under section 241(a)(4) of the Act, rather than under 241(a)(1) with an underlying basis of 212(a)(9) does not bar him from qualifying for a waiver under section 212(h).

(8) Where respondent's child, who was born out of wedlock, may have lived with the respondent and his parents in California prior to the child's eighteenth birthday, case is remanded for determination of the child's possible legitimation. If the child was properly legitimated, then the respondent has established prima facie eligibility for a section 212(h) waiver.

CHARGE:

Order:  Act of 1952—Sec. 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime involving moral turpitude within 5 years after entry, and sentenced to confinement therefor for 1 year or more—to wit mail fraud

ON BEHALF OF RESPONDENT: Timothy S. Barker, Esquire
Legal Aid Society of San Diego, Inc.
429 Third Avenue
Chula Vista, California  92010

BY:  Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated February 17, 1978, an immigration judge found the respondent deportable as charged, and denied his applications for relief from deportation under sections 212(c), 212(h), and 245 of the Immigration and Nationality Act, 8 U.S.C. 1182(c), 1182(h) and 1255. The respondent appealed. The record will be remanded.

The respondent, a 29-year-old native and citizen of Mexico, entered the United States as a lawful permanent resident on April 14, 1965. He resided in the United States, attending school and living with family friends, until 1970. In 1970, the respondent obtained employment with a brokerage firm in San Ysidro, California. Unable at this time to maintain a residence in the United States for economic reasons, the respondent moved back to Mexico, where he could live with his parents rent-free. The respondent had on September 19, 1967, executed a commuter questionnaire (SW-426), and his alien registration receipt card (Form I-151) was modified to designate him as a commuter. The respondent maintained a commuter status from 1970 to 1976, entering the United States each day for work, and recrossing back to Mexico in the evenings. In September of 1976, the respondent, with his family, began residing in the United States.

On October 27, 1976, after a brief visit to Mexico, the respondent was arrested at the San Ysidro border, and charged with mail fraud under 18 U.S.C. 1341. The respondent was taken into custody, detained overnight, and released the next day pending his trial on the mail fraud charges. The respondent pleaded guilty to these charges on July 18, 1977, and he was sentenced to confinement for 1 year and 1 day. This sentence was suspended. Deportation proceedings were initiated against the respondent on September 21, 1977, when an Order to Show Cause was issued against him.

At a deportation hearing begun in October of 1977, and completed in February of 1978, the respondent was found deportable under section 241(a)(4) of the Act, 8 U.S.C. 1251(a)(4), as an alien convicted of a crime involving moral turpitude within 5 years of entry, and sentenced to confinement therefor for a year or more. All applications for discretionary relief were denied by the immigration judge.

On appeal, the respondent makes several arguments. To begin with, he contends that the immigration judge's finding of deportability was incorrect, because there had been no conviction of a crime involving

moral turpitude within 5 years of his entry as a lawful permanent resident. He then argues that he is eligible for a waiver under section 212(c) of the Act because of his alleged 7 years of continuous domicile in the United States, that he is eligible for a 212(h) waiver, as that relief "should be available in a deportation hearing," and that he is eligible for adjustment of status under section 245 of the Act. Finally, the respondent argues that he should properly have been placed in exclusion proceedings, rather than in deportation proceedings, "since he had not effected an 'entry' into the United States." We will consider these arguments separately.

The immigration judge's finding of deportability was correct. Section 241(a)(4), under which the respondent was charged, and found deportable, provides for the deportation of "any alien" who is "convicted of a crime involving moral turpitude committed within 5 years after entry." The statute does not specify that the crime must have been committed within 5 years of a lawful permanent resident's original entry as an immigrant. A crime committed within 5 years of any entry made by an alien can form the basis for deportation under section 241(a)(4). See Steinsvik v. INS, 603 F.2d 225 (9 Cir. 1979). In the present case, the respondent's mail fraud began on an unknown date, and continued to July 1976 (see Ex. 3). From 1970 to September of 1976, the respondent held the status of commuter, and as such made an "entry" into the United States nearly every day. Matter of Rico, 16 I&N Dec. 181 (BIA 1977); Matter of Diaz, 15 I&N Dec. 488 (BIA 1975); Matter of Hoffman-Arvayo, 13 I&N Dec. 750 (BIA 1971). Hence, there can be no question that the respondent committed the crime of mail fraud within 5 years of an entry into the United States. As he was sentenced to imprisonment for a year or more for this crime, he is deportable under section 241(a)(4). The fact that the respondent's sentence was suspended does not change this result. Matter of M—, 6 I&N Dec. 346 (BIA 1954). See also Matter of De la Cruz, 15 I&N Dec. 616 (BIA 1976).

We also agree with the immigration judge that the respondent was properly in deportation proceedings, rather than exclusion proceedings. The respondent's contention that he has made no "entry" since his conviction, so as to be amenable to a deportation hearing, is wholly without merit. It is true that an alien makes an "entry" for immigration purposes only when he comes into the United States "free from actual or constructive restraint." Matter of Yam, 16 I&N Dec. 535 (BIA 1978). See also U.S. ex rel. Lam Fo Sang v. Esperdy, 210 F.Supp. 786 (S.D.N.Y. 1962); Matter of V—Q—, 9 I&N Dec. 78 (BIA 1960). Here, the respondent came into the United States on October 27, 1976, under custody, and so no entry was made at that time. However, when he was released the following day without bond, and only on the condition that he appear for his trial on the mail fraud charges, an entry was made.

He was then free from any legal restraints imposed upon him by the immigration laws. *See Matter of V—Q—, supra.* Moreover, the respondent testified that he made many brief trips to Mexico after he was apprehended in October of 1976, as well as after his conviction in July 1977. *See* transcript at 41-42. He reentered the United States and was inspected after each of his departures to Mexico. Given these undisputed facts, no serious claim can be made that the respondent should be in exclusion proceedings.

With regard to the respondent's application for discretionary relief under section 212(c) of the Act, we find, as did the immigration judge, that the respondent is ineligible for this waiver. Section 212(c) provides for a waiver of certain grounds of excludability for lawful permanent residents who temporarily proceed abroad voluntarily, and not under an order of deportation, and who are returning to a "lawful unrelinquished domicile of 7 consecutive years." The respondent argues that he satisfies the 7 years' domicile requirement because he never really abandoned his United States domicile during the years he was a commuter. We cannot agree.

The word "domicile" in section 212(c) refers to the legal concept of being a domiciliary of the United States. *See Matter of Garcia-Quintero,* 15 I&N Dec. 244 (BIA 1975). Thus, in order for an alien to establish "domicile" in the United States, he must be physically present here and have the intention of making the United States his home for the indefinite future. *Gilbert v. David,* 235 U.S. 561, 569-570 (1915). Once a domicile is acquired, it is retained until such time as a domicile is established elsewhere. *Garner v. Pearson,* 374 F.Supp. 580, 590 (M.D. Fla. 1973). The fact that an alien has the status of an immigrant lawfully admitted for permanent residence does not necessarily mean that he intends to reside here permanently. *Saxbe v. Bustos,* 419 U.S. 65 (1974). *See Matter of Carrasco,* 16 I&N Dec. 195 (BIA 1977), *aff'd. sub nom. Carrasco-Favela v. INS,* 563 F.2d 1220 (5 Cir. 1977).

The question presented is one of fact: did the respondent from 1970 to 1976 either have the intention to make his home in Mexico for the indefinite future, or lack an intention to make his home elsewhere? *Gilbert v. David, supra; Matter of Carrasco, supra.* The respondent moved to Mexico in 1970 for economic reasons. He stated at his hearing that he and his family intended to move back to the United States when his youngest sister finished primary school, so that she could attend junior high school in this country (Tr. at 28). It is argued that the respondent "only left the United States for a temporary period of time, a fixed period of time," such period to end when his sister became eligible to begin secondary school in the United States (Tr. at 33). The respondent contends that this fact, coupled with the facts that he spent much time in the United States during these years, had most of his

friends here, paid taxes here, maintained a California driver's license, and registered for the Selective Service here, warrant a finding that the respondent's United States domicile, for 212(c) purposes, was not abandoned in 1970. The fact remains, however, that for 6 years the respondent lived with his family in Mexico, and that he had no actual home in the United States to which to return during this time. From these facts we can only conclude that the respondent's stay in Mexico from 1970 to 1976 was far from temporary in nature, and that it precludes a finding of 7 years' lawful unrelinquished domicile under section 212(c).

Although we find the respondent ineligible for a 212(c) waiver, we believe that he may be eligible for a waiver under section 212(h). That section provides that:

> Any alien, who is excludable from the United States under paragraphs (9), (10), or (12) of this section, who (A) is the spouse or child, including a minor unmarried adopted child, of a United States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen or lawful resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States.

This Board has held that relief under section 212(h) and its predecessors (Section 5 of the September 11, 1957 Act, and the prior 212(g) may be granted nunc pro tunc in deportation proceedings in order to cure a ground of inadmissibility at the time of entry. *Matter of Millard*, 11 I&N Dec. 175 (BIA 1965); *Matter of P—*, 7 I&N Dec. 713 (BIA 1958). *See also Matter of Bernabella*, 13 I&N Dec. 42 (BIA 1968); *Matter of Mascorro-Perales*, 12 I&N Dec. 229 (BIA 1967). The immigration judge in his decision attempts to distinguish *Matter of P—, supra*, on the ground that in that case the respondent was inadmissible at the time of his original entry as a lawful permanent resident, and he was subsequently charged under section 241(a)(1) of the Act as an alien excludable at entry. In the present case, the respondent did not become excludable until long after his entry as an immigrant, and he was charged with deportability under section 241(a)(4).

Section 212(a) of the Act provides for the exclusion of any alien, at any time, if he fits into an excludable class. Aliens who become inadmissible after an original lawful entry may later be excluded from the United States if they depart and seek to reenter, and they may also at such later date be eligible for various waivers of excludability. Hence, the fact that the respondent was not inadmissible at the time of

his original entry does not bar him from seeking 212(h) relief. Nor do we believe that the fact that an alien is charged under section 241(a)(4), rather than under 241(a)(1) with an underlying basis of 212(a)(9), should prevent that alien from qualifying for a waiver under section 212(h). In an analogous case involving the 212(c) waiver, we held that, "a waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible *because of the same facts which form the basis of his deportability." Matter of Tanori*, 15 I&N Dec. 566 (BIA 1976). (Emphasis added.) In *Tanori*, the alien was charged with deportability under section 241(A)(11) of the Act (not under section 241(a)(1) with an underlying basis of 212(a)(23)), yet he was found eligible for a nunc pro tunc waiver under section 212(c). Similarly, we believe that the respondent in this case should not be precluded from obtaining a waiver under 212(h) due to the technical fact that he was charged under section 241(a)(4) rather than under 241(a)(1).

The respondent is the father of a United States citizen child, born on April 6, 1977. He has departed the United States and reentered on numerous occasions since the birth of this child. Consequently, authority for a waiver under section 212(h) existed at the time of these subsequent entries if the respondent's daughter qualifies as his child under the immigration laws. *Compare Matter of Bernabella, supra*. In order for a child to qualify as the "child" of his father for immigration purposes, that child must be either legitimate at birth, or legitimated prior to the age of 18 under the law of the child's residence or domicile, or under the law of the father's residence or domicile. Section 101(b)(1) of the Act, 8 U.S.C. 1101(b)(1). As the respondent's daughter was born out of wedlock, and the respondent has never married the child's mother, the child cannot qualify as the legitimate child of the respondent. However, according to the respondent's testimony, his daughter lives with him and his parents in California (Tr. at 24, 26, 34). Under California law, legitimation of a child can be accomplished by methods other than the marriage of the child's natural parents. *See Matter of Buenaventura*, 16 I&N Dec. 456 (BIA 1978). The respondent's testimony indicates that his daughter may have been legitimated under the applicable law (Tr. at 34), but the issue of the child's possible legitimation was not raised at the hearing. On remand, therefore, the respondent should be given an opportunity to establish that his daughter has been legitimated and that she therefore qualifies as his child under the immigration laws. If he can make such a showing, then he will have established prima facie eligibility for a section 212(h) waiver.

The respondent has been a permanent resident alien for over 14 years. He has close family ties in the United States, including his

lawful permanent resident mother and his United States citizen sisters, as well as his citizen daughter. Following his conviction for mail fraud, the respondent's sentence was suspended. He has been working full-time, making restitution payments, and meeting regularly with his probation officer since the time of his conviction. The record contains no evidence of misconduct apart from the aforementioned conviction. Given these facts, we believe that the respondent may merit a nunc pro tunc waiver under section 212(h). On remand (assuming legitimation of the child is established), the immigration judge should consider any evidence of hardship which may be presented by the respondent, so that a decision as to whether the respondent merits this waiver as a matter of discretion may be made.

As our decision with regard to the 212(h) application disposes of this case, we need not reach the issue of the respondent's application for adjustment of status under section 245 of the Act.

ORDER: The record is remanded to the immigration judge for further proceedings consistent with this opinion, and for the entry of a new decision.